UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN D. REED, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:15-cv-00041-RLY-TAB |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN Commissioner of Social Security, | ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

This appeal by Plaintiff Kevin D. Reed raises two issues: (1) whether the Administrative Law Judge's credibility determination was supported by substantial evidence; and (2) whether the ALJ's evaluation of medical opinion evidence was supported by substantial evidence. The Court held oral argument on this matter on September 21, 2015. Set forth below is the Court's oral ruling from the bench. For the reasons set forth, the Magistrate Judge recommends that Reed's brief in support of appeal [Filing No. 15] be granted.

By way of background, Reed alleges a disability start date of May 18, 2010. For purposes of this appeal, Reed's impairments consist of asthma, adrenal insufficiency, and fibromyalgia, which the ALJ found to be severe at step two. At step four, the ALJ found Reed capable of performing less than a full range of light work, could stand and walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, lift ten pounds

frequently and ten pounds occasionally, and had to avoid concentrated exposure to fumes, odors, gases, poor ventilation, and heights.

Relying on the testimony of a vocational expert, the ALJ concluded Reed is capable of performing past relevant work as a nursing services director. [Filing No. 13-2, at ECF p. 30.] The Appeals Council denied Reed's request for review and this appeal followed.

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart,* 331 F.3d 565, 568 (7th Cir. 2003). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010).

Reed challenges the ALJ's credibility assessment in five ways. Reed argues the ALJ misconstrued his ability to occasionally engage in activities, improperly determined that his symptoms were controlled with medication, unjustifiably accused him of drug-seeking behavior, unreasonably accused him of noncomplying with recommended treatment, and failed to account for his medication side effects.

The ALJ's credibility determination is generally entitled to special deference. *Sims v. Barnhart*, 432 F.3d 536, 538 (7th Cir. 2006). The Court looks to whether the ALJ considered the entire case record and whether her credibility determination contains specific reasons supported by the evidence of record. *Prochaska* v. *Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). In cases involving fibromyalgia, the credibility determination is particularly important because there are few objective indicators that support the claimant's

pain complaints. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Reed argues the ALJ erroneously relied on a handful of instances where he was active to find him capable of full-time employment. The ALJ found that Reed's traveling out of state, exercising at the gym on a daily basis, and pursuing volunteer opportunities were inconsistent with his allegations of disabling symptoms and supported a finding that he can perform at a light exertional level. [Filing No. 13-2, at ECF pp. 26-27.]

The record confirms the ALJ's statement that Reed was able to exercise, go to the store, travel, and volunteer, but those same records indicate that when Reed was in pain, he canceled his plans and became isolated and inactive. [Filing No. 13-2, at ECF p. 94; Filing No. 13-7, at ECF p. 32; Filing No. 13-10, at ECF p. 44.] The ALJ overlooked this and the many times that Reed reported to his doctors that his symptoms waxed and waned; that is, he had good days and bad days. [Filing No. 13-2, at ECF pp. 91, 94; Filing No. 13-6, at ECF pp. 15, 35, 37, 57; Filing No. 13-7, at ECF pp. 53, 68; Filing No. 13-9, at ECF pp. 17, 41; Filing No. 13-11, at ECF pp. 29, 36, 64; Filing No. 13-16, at ECF p. 29.]

Social Security Ruling 12-2p expressly recognizes that fibromyalgia symptoms may fluctuate in intensity and may not always be present. Reed testified that he typically had 20 bad days and ten good days in a month. [Filing No. 13-2, at ECF p. 101.] The medical expert testified that exercise is a common treatment for fibromyalgia. [Filing No. 13-2, at ECF p. 74.] The ALJ erred by failing to recognize that Reed's activities were frequently interrupted by unscheduled periods of incapacitation. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (finding error where the ALJ only cites to activities on the good days).

Reed next argues that the ALJ erroneously concluded his fibromyalgia symptoms are well managed with medication. [Filing No. 13-2, at ECF p. 70.] While there is some

evidence to support this conclusion, this finding is not a complete nor an accurate statement of the record. The exhibits the ALJ relied upon to reach this conclusion also contained evidence that when Reed takes his medication, he feels cloudy and dopey, his mood is up and down, he has to pull over while driving or feeling sleepy, he occasionally experiences fatigue and back pain, and he experiences panic attacks and anxiety. [Filing No. 13-11, at ECF pp. 41, 64, 75; Filing No. 13-13, at ECF p. 7.]

The ALJ did not explain why she only focused on statements that Reed felt well when taking medication. The ALJ ignored the balance of the information in the evidence she cited. This is error. There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Even if Reed responded well to the medication half the time, he could not hold down a full-time job. *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

Next, the ALJ accused Reed of drug-seeking behavior, quoting statements of one doctor who stated he favored a narcotic-free approach to pain management as addiction issues were involved. Reed admits addiction is part of his medical history, but asserts that the ALJ improperly used this against him. The Commissioner argues that the ALJ rightfully considered Reed's history of addiction, but as Reed argues, it is well documented that he was open about his history and tried to limit his medication use, whereas a drug seeker would attempt to maximize their access to narcotic medication. By accusing Reed of drug-seeking behavior, the ALJ ignored the weight of the evidence that he tried to avoid drug reliance as much as possible. The ALJ erroneously concluded Reed exhibited drug-seeking behavior because she overlooked large portions of the medical record demonstrating that he sought medical treatment under the supervision of medical

4

professionals who were aware of his history.

Reed next takes issue with the ALJ accusing him of noncompliance with medical advice, particularly failing to taper down his prednisone dosage. [Filing No. 13-2, at ECF p. 28.] The record actually indicates that Reed wanted to taper his dosage and tried multiple times to do so, but found it too unbearable, either due to substantial mood instability or severely increased body aches and pains. [Filing No. 13-7, at ECF p. 29.] He even went so far as to seek more intensive assistance from the Mayo Clinic to accomplish the tapering. [Filing No. 13-7, at ECF pp. 29-52.] At one point he had tapered down on his own, but was prescribed additional doses due to bronchitis, and he had difficulty decreasing the dose again thereafter. [Filing No. 13-7, at ECF p. 49.]

Although the failure to follow a treatment plan can undermine credibility, an ALJ must first explore the reasons for the lack of medical care before drawing a negative inference. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). The ALJ did not discuss any of the difficulties Reed had with tapering his prednisone, which was error. This error, in addition to the three errors just noted, combined to undermine the ALJ's credibility determination and therefore supports remand.

Reed also argues the ALJ failed to address the side effects of his medications, including drowsiness, fatigue, sleepiness, dry mouth, nausea, weight gain, anxiety, and a morning hangover from several of those medications. [Filing No. 13-6, at ECF p. 34, 56.] An ALJ is not required to make specific findings concerning the side effects of prescription drugs on a claimant's ability to work and, therefore, this fifth argument challenging the ALJ's credibility determination is somewhat lacking. However, because this case should be remanded for the reasons already discussed, the ALJ is encouraged to consider the side

effects of Reed's medications on remand.

The second issue Reed advances on appeal is whether the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence. A treating doctor's medical opinion is entitled to controlling weight only where it is well supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ determines that a treating doctor's opinion is not entitled to controlling weight, she must evaluate it and determine what weight to give it according to the factors set forth in Section 404.1527(d).

Here the ALJ gave little weight to treating physician Dr. John Schaefer's opinion, concluding it is "wholly inconsistent with the medical record." [Filing No. 13-2, at ECF p. 28-29.] The ALJ's explanation contains no discussion of Dr. Schaefer's lengthy relationship with Reed or whether Dr. Schaefer supported his opinion with evidence. The ALJ's analysis of Dr. Schaefer's opinion discussed a few of the required factors, but the ALJ's analysis of Dr. Schaefer's opinion was rather cursory and only broadly and very generally cites to the medical record.

Instead, the ALJ placed significant weight on the opinion of Dr. Sands, the state agency non-examining, non-treating consultant, who completed essentially a check box form. [Filing No. 13-2, at ECF p. 28; Filing No. 13-11, at ECF p. 2-9.] This is problematic on two fronts. First, Dr. Sands' opinion is dated October 4, 2011, nearly two years before the hearing. [Filing No. 13-11, at ECF p. 9.] Second, there is no indication on the form or by the ALJ as to what evidence Dr. Sands reviewed in forming his opinion. [Filing No. 13-11, at ECF p. 3.] The ALJ provided such little analysis that her conclusion

cannot be viewed as supported.

Another problem with the ALJ's evaluation of the medical opinion evidence is that the ALJ placed great weight on the opinion of Dr. Houser, the non-treating, non-examining medical expert, who was present and testified at the hearing. [Filing No. 13-2, at ECF p. 29.] The ALJ gave this opinion great weight, "because it is consistent with the claimant's good daily activities, positive response to treatment, pattern of noncompliance with medical instructions, mild asthmatic condition with continued cigarette smoking, and treatment notes documenting normal gait and full function of his extremities." [Filing No. 13-2, at ECF p. 29.]

First of all, as previously noted, the ALJ's credibility findings with regard to Reed's good daily activities, positive response to treatment, and pattern of noncompliance with medical instructions are not adequately supported. The bigger problem, however, is the ALJ did not analyze Dr. Houser's opinion and broadly cites to hundreds of pages of records to support her conclusion. Significantly, Dr. Houser admitted in his testimony that fibromyalgia is out of his field of interest and expertise, he has never diagnosed anyone with fibromyalgia, and he does not treat anyone for fibromyalgia. [Filing No. 13-2, at ECF p. 74-75.] His testimony is illuminating in this regard. Dr. Houser testified that his opinion of fibromyalgia is based not on treatment, but on his reading of literature. Dr. Houser also testified that the likelihood of a person continuing to work with fibromyalgia, "is more dependent on their persistence and determination to work rather than the underlying disease." [Filing No. 13-2, at ECF p. 86.]

It is noteworthy that Reed moved to strike this testimony at trial due to bias. However, the ALJ declined to do so. Reed's attorneys stated, "Judge, he's never treated a

7

fibromyalgia patient and he's never diagnosed it. And he's never opined that a fibromyalgia patient is able to do less than sedentary work. So I believe that track record disqualifies him from being an unbiased medical expert today." [Filing No. 13-2, at ECF p. 78.] The ALJ responded that she would, "Take your objections under consideration when I rule in this case." *Id.* As Reed's counsel pointed out at oral argument, the ALJ never explained why these shortcomings in Dr. Houser's opinion did not undermine his conclusions. In fact, it does not appear anywhere from the ALJ's order that she took these objections in any meaningful way. Rather, it appears as though the ALJ simply embraced what could be accurately characterized as fanciful speculation by Dr. Houser rather than any medical science based upon experience or expertise with fibromyalgia patients.

It appears, in fact, that what this case would benefit from would be a remand to allow a medical expert with actual expertise in fibromyalgia to opine on whether Reed was disabled or is capable of performing work in the national economy. Instead, what we are left with is an ALJ who discounted Reed's treating doctor who had a long history of treating him for fibromyalgia, adopted conclusions by the state medical agency examiner even though that was essentially a check box form based on a review of medical records almost two years prior, and then relied upon a medical expert, Dr. Houser, who had limited experience with fibromyalgia and who, in 30 years of testifying, had never found a fibromyalgia patient or claimant capable of doing something less than sedentary work. When those facts are put under any type of reasonable scrutiny, the only conclusion that can be reached is that the decision is not supported by substantial evidence.

In short, the ALJ erroneously weighed the opinions of Dr. Schaefer, Dr. Sands, and Dr. Houser. The ALJ did not consider that Reed's condition had changed since Dr. Sands

reviewed the record.   The ALJ was indifferent to Dr. Houser's lack of expertise with fibromyalgia patients and his belief that Reed's ability to work was based on willpower. Overall, the ALJ failed to build a logical bridge from the medical evidence to her conclusions and failed to minimally articulate her analysis.   This was error.

For all these reasons, I recommend that the Court grant Reed's brief in support of appeal [Filing No. 15] and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).   I will ask the court reporter to transcribe that portion of this argument that represents my findings and ruling, and I will have that filed on the docket.   Any appeal of this recommended decision must be made within 14 days after that is docketed.   Thank you to both sides for your arguments this morning.

Date: 10/15/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution to all counsel of record via CM/ECF.